UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 13-0261 |
| Plaintiff, | <u>I N F O R M A T I O N</u> |
| v. | [18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| RAYMOND JOSEPH, | |
| Defendant. | |

The United States Attorney charges:

At all times relevant to this Information:

A. <u>INTRODUCTORY ALLEGATIONS</u>

1.  The Boeing Company ("Boeing") was a Delaware corporation with its headquarters and principal place of business in Seattle, Washington. Boeing's business included the research, development, manufacture, and sale of space satellites. Boeing was a "prime contractor" that had direct contracts with United States Government agencies, including the Department of Defense ("DOD"), United States Air Force ("USAF"), National Aeronautical Space Administration ("NASA"), and United

States National Reconnaissance Office ("NRO"), to supply satellites, satellite parts, and other products. Boeing Space and Intelligence System ("BSIS") was a unit of Boeing which focused on space systems and was headquartered in Seal Beach, California, within the Central District of California.

2. Mark Allen ("Allen") was a Procurement Agent employed by BSIS in El Segundo, California. Allen's job was to procure from subcontractors parts used for BSIS's United States Government and commercial programs. BSIS procured parts through a competitive bidding process in which Allen sent requests for bids to various subcontractors, subcontractors submitted bids on projects to Allen, and Allen was to award purchase orders to the subcontractors with the best bids.

3. Defendant RAYMOND JOSEPH ("defendant JOSEPH") was an independent outside sales representative for numerous subcontractors who did business with BSIS and other United States Government prime contractors.

4. Subcontractor #1 was a California corporation with facilities in Whittier, California and Montebello, California, both within the Central District of California. Subcontractor #1 worked as a subcontractor for BSIS on projects funded by various United States Government agencies and commercial companies. In or about August 2009, BSIS excluded Subcontractor #1 from doing further work for BSIS due to work quality and performance issues.

5. A.H. was an owner and manager of Subcontractor #1. A.H. was responsible for the day-to-day operations of

Subcontractor #1. A.H. retained defendant JOSEPH to obtain BSIS purchase orders for Subcontractor #1.

6. Nace Sheet Metal Company ("Nace") was a sole proprietorship located in Anaheim, California, within the Central District of California. Nace's primary business was the manufacturing of office furniture. Nace served as a front for Subcontractor #1 after BSIS excluded Subcontractor #1 from doing business with BSIS.

7. Cesar Soto ("Soto") was the owner of Nace and was responsible for the day-to-day operations of Nace. Soto was related through marriage to A.H.

8. Subcontractor #2 was a California corporation located in Torrance, California, within the Central District of California. Subcontractor #2 worked as a subcontractor for BSIS on projects funded by various United States Government agencies and commercial entities.

9. N.M. was the owner and manager of Subcontractor #2. N.M. was responsible for the day-to-day operations of Subcontractor #2. N.M. retained defendant JOSEPH to obtain BSIS purchase orders for Subcontractor #2.

B. OBJECTS OF THE CONSPIRACY

10. Beginning in or about 2004 and continuing through in or about February 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendant JOSEPH, together with coconspirator Allen and others known and unknown to the United States Attorney, knowingly combined, conspired,

and agreed to commit the following offenses against the United States:

    a. To offer and accept kickbacks, in violation of Title 41, United States Code, Sections 8702 and 8707;

    b. To commit mail fraud, in violation of Title 18, United States Code, Section 1341; and

    c. To defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of a government agency, namely, the Internal Revenue Service ("IRS"), by deceitful and dishonest means.

C. <u>THE MANNER AND MEANS OF THE CONSPIRACY</u>

11. The objects of the conspiracy were carried out, and to be carried out, in substance, as follows:

    a. Starting in or about 2004, defendant JOSEPH and Allen entered into a business arrangement in which Allen agreed to award BSIS purchase orders to subcontractors represented by defendant JOSEPH in exchange for kickbacks from defendant JOSEPH's subcontractor clients to Allen.

    b. Defendant JOSEPH told his subcontractor clients, including Subcontractor #1 and Subcontractor #2, that they could obtain BSIS purchase orders if they paid kickbacks through him to Allen.

    c. Allen assisted defendant JOSEPH's subcontractor clients in obtaining BSIS purchase orders by providing them via email procurement-sensitive information that gave them an improper advantage in bidding on purchase orders.

    d. Defendant JOSEPH provided Allen with courtesy

bids from defendant JOSEPH's subcontractor clients to make it appear as if Allen had engaged in a competitive bidding process, as required by BSIS's procurement requirements, when, in fact, Allen did not engage in a competitive bidding process.

    e.  Defendant JOSEPH and Allen used pseudonyms to communicate with each other via email in order to conceal their true identities from BSIS.  Defendant JOSEPH used the pseudonyms C, Caesar, Nace@yahoo.com, Private Gump, Private RJ, Ramon Jose, and RJ.  Allen used the pseudonyms Dr. A and General Allen.

    f.  Defendant JOSEPH and his subcontractor clients submitted quotes to BSIS to deliver products under United States Government and commercial contracts.  Defendant JOSEPH and these subcontractors inflated the bids by the amount of the kickbacks to be paid to Allen.

    g.  Allen awarded defendant JOSEPH's subcontractor clients BSIS purchase orders.

    h.  Defendant JOSEPH's subcontractor clients delivered products required under the BSIS purchase orders.

    i.  Defendant JOSEPH's subcontractor clients sent invoices to BSIS to get paid for work under the purchase orders, and in the process of doing so, defendant JOSEPH's subcontractor clients inflated the invoices by the amount of the kickbacks.

    j.  BSIS paid defendant JOSEPH's subcontractor clients via electronic funds transfer ("EFT") and U.S. Mail.

    k.  Defendant JOSEPH's subcontractor clients paid defendant JOSEPH a commission of approximately 13% of the money paid by BSIS.

l. Defendant JOSEPH's subcontractor clients concealed the kickbacks to Allen by various means, including: making checks payable to cash; including Allen's payment in defendant JOSEPH's paycheck; writing two checks to defendant JOSEPH when, in fact, one was for Allen; and writing checks to defendant JOSEPH's family members.

m. Defendant JOSEPH deposited the checks received from his subcontractor clients and withdrew cash from his bank accounts to pay kickbacks to Allen.

n. With the knowledge of defendant JOSEPH's subcontractor clients, defendant JOSEPH paid Allen approximately 2-3% of the purchase order price in cash as a kickback for influencing the award of BSIS purchase orders, usually during "Program Reviews," which were lunch meetings between defendant JOSEPH and Allen.

o. When BSIS excluded Subcontractor #1 due to work quality and performance issues, defendant JOSEPH, Allen, and A.H. (the owner of Subcontractor #1) recruited Soto, doing business as Nace, to submit bids on behalf of Subcontractor #1 in the name of Soto and Nace and thus deceived BSIS as to who manufactured the products supplied under the BSIS purchase orders.

p. Defendant JOSEPH instructed his subcontractor clients to issue defendant JOSEPH IRS Forms 1099 for less than the amount they paid defendant JOSEPH. Defendant JOSEPH also instructed his subcontractor clients to issue checks and IRS Forms 1099 to defendant JOSEPH's relatives, who did not perform

any services for defendant JOSEPH's subcontractor clients.

q. Defendant JOSEPH's subcontractor clients issued defendant JOSEPH IRS Forms 1099 for less than the amount paid to defendant JOSEPH and issued IRS Forms 1099 to defendant JOSEPH's family members who did no work for the subcontractors.

r. Defendant JOSEPH used the false IRS Forms 1099s that were issued to him as the basis for his filed 2007, 2008, 2009, and 2010 federal income tax returns, each of which understated his taxable income.

s. As a direct and intended part of the conspiracy described above, defendant JOSEPH's subcontractor clients received approximately $4,569,551 in BSIS purchase orders of which approximately $715,891 was paid to defendant JOSEPH and approximately $109,843 of which was paid to Allen. The loss to BSIS and the United States resulting from the kickback and mail fraud conspiracy was at least approximately $109,843, the amount of kickbacks paid to Allen.

t. The loss to the United States resulting from defendant JOSEPH's impeding, impairing, obstructing, and defeating the lawful functions of the IRS with respect to defendant JOSEPH's false 2007, 2008, 2009, and 2010 tax returns was approximately $92,015.

D. OVERT ACTS

12. In furtherance of the conspiracy, and to accomplish its objects, defendant JOSEPH, together with others known and unknown to the United States Attorney, committed and willfully

caused others to commit the following overt acts, among others, in the Central District of California and elsewhere:

OVERT ACTS RELATED TO SUBCONTRACTOR #1

Overt Act No. 1: In or about May 2004, defendant JOSEPH agreed to serve as an outside sales representative for A.H. and Subcontractor #1 and to obtain BSIS purchase orders for them by paying kickbacks to Allen.

Overt Act No. 2: On or about June 15, 2007, Allen awarded Subcontractor #1 Purchase Order No. NNB8-909268, which was under BSIS U.S. Navy Contract Number N00039-04-C-2009.

Overt Act No. 3: On or about November 1, 2007, BSIS sent via U.S. Mail a check to Subcontractor #1 for approximately $128,686 for work related to Purchase Order No. NNB8-909268, among other purchase orders.

Overt Act No. 4: On or about November 6, 2007, A.H. issued a check from Subcontractor #1's bank account to defendant JOSEPH for approximately $5,455 for Purchase Order No. NNB8-909268.

Overt Act No. 5: On or about November 6, 2007, defendant JOSEPH paid Allen a cash kickback of approximately $1,000 for awarding Subcontractor #1 Purchase Order No. NNB8-909268, which was under BSIS U.S. Navy Contract Number N00039-04-C-2009.

Overt Act No. 6: On or about February 24, 2011, defendant JOSEPH wrote an email to an employee of Subcontractor #1 directing that Subcontractor #1 provide to defendant JOSEPH an IRS Form 1099 for approximately $85,014 and to a relative of

defendant JOSEPH an IRS Form 1099 for approximately $4,105.

Overt Act No. 7: In or about 2011, Subcontractor #1 issued to defendant JOSEPH a 2010 IRS Form 1099 for approximately $85,014 despite paying defendant JOSEPH approximately $157,111 in 2010.

OVERT ACTS RELATED TO NACE

Overt Act No. 8: In or about January 2011, defendant JOSEPH created the email account NaceInc@yahoo.com to submit bids to BSIS and make it appear as if such bids came from Nace, when, in fact, the bids came from him and Subcontractor #1.

Overt Act No. 9: On or about October 12, 2011, defendant JOSEPH paid a cash kickback to Allen for awarding numerous purchase orders, including Purchase Order 514246, to Subcontractor #1 through Nace.

Overt Act No. 10: On or about October 19, 2011, BSIS paid Nace approximately $34,950 via check by U.S. Mail for Purchase Order 514246, which was related to a Boeing Capital Equipment Contract with costs partially allocated to the United States.

OVERT ACTS RELATED TO SUBCONTRACTOR #2

Overt Act No. 11: In or about September 2009, defendant JOSEPH entered into a sales agreement with Subcontractor #2 and N.M. in which defendant JOSEPH would provide Subcontractor #2 $2,000,000 in annual purchase orders from BSIS in exchange for a 13% commission, a portion of which would be paid as a kickback to Allen.

Overt Act No. 12: On or about March 3, 2010, Allen

sent defendant JOSEPH an email requesting a courtesy bid from Subcontractor #2.

<u>Overt Act No. 13</u>: On or about June 28, 2010, Subcontractor #2 and N.M. obtained Purchase Order NNB8-930138 which was under BSIS NASA Contract No. NNG08DA00C.

<u>Overt Act No. 14</u>: On October 29, 2010, Subcontractor #2 sent an invoice to BSIS for approximately $22,275 for work done on Purchase Order NNB8-930138, which was under BSIS NASA Contract No. NNG08DA00C.

<u>Overt Act No. 15</u>: On or about November 22, 2010, defendant JOSEPH paid Allen a kickback for awarding to Subcontractor #2 Purchase Order NNB8-930138, which was under BSIS NASA Contract No. NNG08DA00C.

<u>Overt Act No. 16</u>: In or about February 2011, Subcontractor #2 provided defendant JOSEPH with 2010 IRS Form 1099s for approximately $22,000 despite having paid defendant JOSEPH approximately $36,947 in 2010.

CRIMINAL FORFEITURE ALLEGATION

[28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C); and 21 U.S.C. § 853]

1. Notice is hereby given that the United States intends to seek forfeiture in this case pursuant to the provisions of Title 28, United States Code, Section 2461(c), Title 18, United States Code, Section 981(a)(1)(C), and Title 21, United States Code, Section 853, with respect to the substantive charge in this Information. Defendant RAYMOND JOSEPH ("defendant JOSEPH"), if convicted of the offense charged, shall forfeit to the United States the following property:

   a. All right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to the charged offense, including but not limited to the sum of $606,048.00.

   b. A sum of money equal to the total amount of proceeds derived from the offense for which defendant JOSEPH is convicted.

2. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant JOSEPH, if convicted, shall forfeit substitute property, up to the total value of the property described above in paragraph 1(b), if, by any act or omission of JOSEPH, the property described in paragraph 1(a), or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited

with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

ANDRÉ BIROTTE JR.
United States Attorney

*/s/ R. E. Dugdale*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

CONSUELO S. WOODHEAD
Assistant United States Attorney
Deputy Chief, Major Frauds Section

DAVID L. KIRMAN
Assistant United States Attorney
Major Frauds Section